**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 18 2014, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**YVETTE M. LAPLANTE**
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: C.C. III (Minor Child) and C.C. II (Father), Appellant-Respondent, | ) ) ) ) ) |
| vs. | ) No. 82A01-1401-JT-39 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, Appellee-Petitioner. | ) ) ) ) |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
The Honorable Renee Allen Ferguson, Magistrate
Cause No. 82D01-1308-JT-85

**August 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

C.C. II ("Father") appeals the juvenile court's order terminating his parental rights as to C.C. III ("Child"). We affirm.

**Issue**

Father raises several issues for our review, which we consolidate into a single issue, whether the trial court abused its discretion in certain evidentiary rulings, thereby committing reversible error.[1]

**Facts and Procedural History**

Child was born to Father and Mother in January 2003. In December 2011, Mother died. Father lived with Child and Child's older sister, B.C. Also residing in the home was the children's maternal grandmother.

On June 11, 2012, a report was submitted to the Vanderburgh County Department of Child Services ("DCS"), alleging that Father had engaged in incest with B.C. The same day, DCS and the Evansville Police Department went to the residence and removed both Child and B.C. from the home. Father subsequently admitted to having engaged in incest with B.C., and was charged with numerous counts of Child Molesting and Incest. He remained incarcerated throughout the course of the instant proceedings.

---

[1] In his reply brief, responding to DCS's arguments concerning waiver of objection to certain evidence, Father contends that the admission of certain evidence was fundamental error. Because the substance of this argument overlaps with the other issues raised by Father on appeal, and because we find any error harmless, we do not separately address Father's contention of fundamental error.

Child and B.C. were placed in foster care. On June 19, 2012, Child and B.C. were adjudicated as Children in Need of Services ("CHINS"). During the pendency of the proceedings, B.C. reached the age of majority.

On August 15, 2013, DCS filed a petition to terminate Father's parental rights as to Child. An evidentiary hearing on DCS's petition was conducted on November 18, 2013. During the hearing, numerous documents and other pieces of evidence were entered into evidence; Father objected to some of these, but not to others.

On January 14, 2014, the court entered its order terminating Father's parental rights to Child.

This appeal ensued. Additional facts will be supplied as necessary.

**Discussion and Decision**

Father appeals the trial court's order terminating his parental rights. Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental

responsibilities. <u>Bester v. Lake Cnty. Office of Family & Children</u>, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. <u>In re L.S.</u>, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), <u>trans. denied</u>.

Indiana Code Section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

    (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. Courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied.

Within this appeal, Father challenges the termination court's evidentiary rulings. Rulings on the admissibility of evidence are left to the sound discretion of the trial courts. We review such rulings for an abuse of discretion, which occurs when the court's decision is contrary to the logic and effect of the facts and circumstances before it. Even where the trial court has abused its discretion in ruling on evidentiary matters, we will not reverse the judgment where such errors are harmless, that is, unless the trial court's errors prejudiced the substantive rights of the objecting party. See Ind. Trial Rule 61.

Here, Father contends that the termination court's rulings, which admitted into evidence various items of evidence, were contrary to the hearsay rule. These included DVD recordings of interviews with Child and B.C. concerning Father's conduct and certain testimony of Child's caseworker concerning the interviews, the probable cause affidavit and

5

other documents associated with Father's criminal case, an investigative report prepared by a DCS caseworker, and statements in counseling records of Child. Most of these items included or repeated allegations concerning Father's alleged molestation of B.C.

By the time of the hearing on DCS's petition to terminate parental rights, B.C. had reached age eighteen, and her disposition was not a subject of the termination proceedings. Thus, the allegations concerning Father's conduct with B.C. were relevant largely to establish a basis for the removal of Child from Father's care and Father's historical pattern of conduct. There is no evidence that Child was subject to abuse of the type alleged as to B.C. The evidentiary matters of which Father complains were therefore of limited relevance to the adjudication of DCS's petition to terminate parental rights.

Assuming without deciding that these items were inadmissible, however, we conclude that any such error was harmless. Moreover, much of this is cumulative evidence that established the basis upon which Child was removed from the home.

Father contends that, without this evidence, there is insufficient evidence to establish the requirement that the termination court conclude by clear and convincing evidence that the reasons for Child's removal from the home would not be remedied. That is, Father argues that DCS did not provide sufficient evidence to satisfy the requirements of subsections 31-35-2-4(b)(2)(B)(i) and (ii). See supra. This statute "is written in the disjunctive" so that only one of the requirements of subsection (B)—here, either that there is a reasonable probability the conditions necessitating a child's removal will not be remedied or that continuation of the

6

parent-child relationship poses a threat to the child's well-being—need be proved by clear and convincing evidence. In re L.S., 717 N.E.2d at 209.

Our review of the record reveals that, after Child's removal from the home and through the time of the hearing on the petition to terminate parental rights, Father remained incarcerated and was therefore unable to receive any form of services from DCS. Testimony from Child's Court-Appointed Special Advocate, Bianca Hernandez ("Hernandez"), and Layne Chapman ("Chapman"), a DCS case worker, indicated that during the pendency of the proceedings, Child developed a strong bond with his foster mother and asked independently on several occasions for his foster mother to adopt him. Both of these individuals testified that while initially Child communicated through written correspondence with Father, by April 2013—more than six months prior to the hearing on the termination petition—Child voluntarily ceased communicating with Father. Testimony from Hernandez and Chapman indicated that before removal from the home, B.C. was responsible for most of the parental and domestic work associated with Child's care. Chapman testified that, in B.C.'s absence, it was unknown how Child would fare; this was one of several reasons Chapman gave for opining that termination of Father's parental rights was in Child's best interests.

In sum, then, there was sufficient independent evidence that reunification of Father and Child posed a threat to Child's well-being. See I.C. § 31-35-4-2(b)(2)(B)(ii). We accordingly find any error associated with the admission of evidence concerning Father's alleged conduct with B.C. to be harmless, and affirm the order terminating Father's parental rights as to Child.

7

Affirmed.

NAJAM, J., and PYLE, J., concur.